USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 2 7 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
VICTOR GONZALEZ,

                      Plaintiff,

    -v-

NEW YORK COUNTY DISTRICT ATTORNEY
CYRUS R. VANCE, JR.,

                      Defendant.
------------------------------------------------------------------- X

13 Civ. 498 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

In 1982, Plaintiff Victor Gonzalez was convicted in New York state court for murdering a police officer and wounding another victim during the course of a robbery. He brings this action under 42 U.S.C. § 1983 seeking access to DNA testing of blood collected at the scene of the crime. Before the Court is Defendant Cyrus R. Vance's motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendant's motion is granted.

I.    BACKGROUND[1]

On March 5, 1982, Plaintiff was convicted, after a jury trial, of two counts of second-degree murder, two counts of first-degree robbery, two counts of first-degree assault, and one count of second-degree burglary. *See People v. Gonzalez*, 494 N.Y.S.2d 866, 866 (1st Dep't

---

[1] The Court has considered facts and arguments presented in all of Plaintiff's submissions, not just his pleadings. *Cf., e.g., Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246–47 (S.D.N.Y. 1999) ("Although material outside a complaint generally is not to be taken into consideration on a motion to dismiss, the policy reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations of a *pro se* plaintiff in opposition papers on a motion where . . . those allegations are consistent with the complaint.").

1985). In 1980, Plaintiff and two other men, Luis Pinto and James Marsan, had broken into an apartment when two police officers arrived on the scene. Plaintiff and Marsan fired on the officers, killing one of them and hitting one of the apartment's residents in the eye, permanently blinding her. Plaintiff himself was shot in the arm during the exchange of gunfire. Am. Compl. ¶¶ 6, 7; Def. Ex. A at 2.

Plaintiff was convicted based on numerous pieces of evidence. One was testimony that blood found at the crime scene matched Plaintiff's. Pl. Ex. A. In addition, a number of witnesses identified Plaintiff as the perpetrator in court, including three who identified him in a pre-trial lineup. Def. Ex. A at 3. One witness, Morgan Perez, saw Plaintiff fleeing from the scene and later saw him with a bloody arm and in possession of a revolver; Plaintiff admitted to Perez that he had shot a police officer. Am. Compl. ¶ 7; Def. Ex. A at 3. Plaintiff was also found throwing a revolver, later identified as the one used in the crime, out of his bathroom window when he was arrested. Def. Ex. A at 3.

Plaintiff appealed his conviction to the First Department, which affirmed, finding that his guilt "was convincingly established." *Gonzalez*, 494 N.Y.S.2d at 866. The New York Court of Appeals denied leave to appeal. *People v. Gonzalez*, 67 N.Y.2d 651 (1986).

In 2002, Plaintiff filed a pro se petition under N.Y. CPL § 440.30(1-a), which allows a prisoner seeking to vacate his conviction the opportunity to obtain DNA testing if a judge determines that such testing would create a "reasonable probability that the verdict would have been more favorable to the defendant." Plaintiff sought access to DNA testing on the blood discovered at the crime scene, which he claimed was not his. On January 31, 2003, Plaintiff's petition was denied by Justice Brenda Soloff, who concluded that whether or not the blood was Plaintiff's, the other evidence against him was so "overwhelming" that DNA testing would not

create the "reasonable probability" of innocence required by New York law. Def Ex. A at 3. Plaintiff filed a similar motion in 2010, seeking to challenge Justice Soloff's conclusion based on a purported retroactive change in the law. That motion was denied. Def. Ex. B.

On January 18, 2013, Plaintiff filed a pro se Complaint in this Court under 42 U.S.C. § 1983, seeking DNA testing of the blood recovered at the crime scene. Specifically, he asks for an injunction requiring Defendant to "release[] the biological evidence for DNA testing." Compl. at 5 Although Plaintiff indicates that he is willing—through "appellate counsel"[2]—to pay for any tests, he asks the Court to order an "independent agency" to actually perform them. Am. Compl. ¶ 12; Pl. Opp. at 2. Plaintiff claims that any tests performed on the blood at the time of his trial, which were the subject of incriminating testimony, were unreliable, a product of "faulty crime lab[o]ratories in the early '80s." Pl. Resp. at 4. He suggests that modern DNA testing will furnish evidence of his innocence. Am. Compl. ¶¶ 13–15.

Defendant moved to dismiss the Complaint on June 21, 2013. In response to Defendant's motion, Plaintiff amended his Complaint, but Defendant subsequently informed the Court that he would rely on his initially filed motion. On November 4, 2013, Plaintiff filed a "response" to Defendant's motion, as well as a separate memorandum of law. Defendant did not file a reply.

## II. LEGAL STANDARD

When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded facts and draw all reasonable inferences in the light most favorable to the non-moving party. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). Although factual allegations are therefore afforded a presumption of truth, a court is "not bound to accept as true a legal

---

[2] Plaintiff, who is proceeding pro se, does not indicate who this counsel is.

conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "To survive a motion to dismiss, the plaintiff's pleading must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

As well as allegations in the complaint itself, a court may consider documents attached as exhibits, incorporated by reference, or relied upon by the plaintiff in bringing suit, as well as judicially noticeable matters. *See Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011); *In re Harbinger Capital Partners Funds Investor Litig.*, No. 12 Civ. 1244 (AJN), 2013 WL 5441754, at *15 n.6 (S.D.N.Y. Sept. 30, 2013). "If a document relied on in the complaint contradicts allegations in the complaint, the document . . . control[s], and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc. v. Diamond*, — F. Supp. 2d —, No. 12 Civ. 3529 (AJN), 2013 WL 4830954, at *1 (S.D.N.Y. Sept. 10, 2013) (quoting *Poindexter v. EMI Record Grp. Inc.*, No. 11 Civ. 559 (LTS), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012)) (internal quotation marks omitted).

Finally, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see Watson v. Geithner*, No. 11 Civ. 9527 (AJN), 2013 WL 5441748, at *3 (S.D.N.Y. Sept. 27, 2013). This policy is "driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of

important rights because of their lack of legal training.'" *Triestman*, 470 F.3d at 475 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## III. DISCUSSION

As an initial matter, it is uncontested that a civil action brought under § 1983 is a proper vehicle for a convicted prisoner seeking access to potentially exculpatory DNA evidence. *See Skinner v. Switzer*, 131 S. Ct. 1289, 1298–1300 (2011). Section 1983 creates a cause of action against a state actor for the "deprivation of *any* rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). Despite the statute's expansive language, a state prisoner seeking relief that will "necessarily imply" the invalidity of his sentence must bring an action in habeas corpus under 28 U.S.C. § 2254, and is barred from utilizing § 1983. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see also Poventud v. City of New York*, — F.3d —, 2014 WL 182313, at *4–11 (2d Cir. Jan. 16, 2014) (en banc). However, post-conviction DNA testing does not necessarily imply the invalidity of a prisoner's sentence, because "while test results might prove exculpatory, that result is hardly inevitable." *Skinner*, 131 S. Ct. at 1298. Therefore, as Defendant recognizes, § 1983 is an appropriate vehicle for Plaintiff's DNA-access claim.[3] Def. Br. at 7 n.3.

The merits of this case are squarely controlled by two precedents: *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52 (2009), and *McKithen v. Brown*, 626 F.3d 143 (2d Cir. 2010). Those decisions require dismissal.

---

[3] Notably, in both his Complaint and his Amended Complaint, Plaintiff appears to assert an actual innocence claim in addition to his DNA-access claim. *See* Am. Compl. ¶ 9; Compl. at 2–3. To the extent that this claim is, in fact, independent of Plaintiff's DNA-access claim—which is questionable—it is not the proper subject of a § 1983 action. *See Dist. Atty's Office for 3d Judicial Dist. v. Osborne*, 557 U.S. 52, 71–72 (2009) (assuming an actual innocence claim exists, it must be brought in habeas); *Matthews v. Craven*, 485 F. App'x 893, 893–94 (9th Cir. 2012) ("Matthews's claims are premised on his 'actual innocence' and success on the merits of these claims would necessarily imply the invalidity of his confinement.").

*Osborne* established the basic framework applicable to claims like Plaintiff's. That case, similar to this one, involved an Alaska prisoner's § 1983 claim seeking access to post-conviction DNA testing. The Supreme Court rejected the idea that there is a "freestanding . . . constitutional right of access" to such evidence. *Osborne*, 557 U.S. at 56. Instead, the Court looked to established procedural due process law. Because "[p]rocess is not an end in itself," a claimant must have an independent, cognizable liberty interest. *Id.* at 67. Only after identifying such an interest can a court determine "what process (if any) is due" under the Fourteenth Amendment to adequately protect it. *Id.*; *see also, e.g., Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463 (1981) ("A state-created right can . . . beget yet other rights to procedures essential to the realization of the parent right. Plainly, however, the underlying right must have come into existence before it can trigger due process protection." (citations omitted)).

The Court determined, based on Alaska statutes and case law, that Osborne enjoyed a liberty interest "in demonstrating his innocence with new evidence under state law." *Osborne*, 557 U.S. at 68. In assessing what process was required to protect that interest, the Court held that because Osborne was a convicted criminal seeking post-conviction relief, his claim should be analyzed under the deferential standard applicable in that context. *Id.* at 68–69; *see, e.g., Herrera v. Collins*, 506 U.S. 390, 407–08 (1993); *Medina v. California*, 505 U.S. 437, 446 (1992). Under that standard, a state's procedures are constitutionally inadequate "only if they are fundamentally inadequate to vindicate the substantive rights provided." *Osborne*, 557 U.S. at 69; *see also Medina*, 505 U.S. at 446, 448 (a state procedure is valid if it either "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" or "transgresses any recognized principle of 'fundamental fairness' in operation"

(quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977); and *Dowling v. United States*, 493 U.S. 342, 352 (1990)) (some internal quotation marks omitted)).

Although Alaska, unlike many states, had not enacted specific laws regulating prisoners' access to DNA testing, the *Osborne* Court held that there was "nothing inadequate" about how the state's laws on post-conviction relief in general "apply to those who seek access to DNA evidence." 557 U.S. at 69. Specifically, the Court found that Alaska's eligibility criteria for obtaining DNA testing—*viz.*, that the evidence was "newly available," "diligently pursued," and "sufficiently material" to the prisoner's guilt or innocence—were "not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental fairness.'" *Id.* at 70 (quoting *Medina*, 505 U.S. at 446, 448). Accordingly, the Court concluded that Osborne did not have a valid § 1983 claim.

In this case, of course, the procedures governing Plaintiff's access to DNA evidence are a matter of New York law. Like Osborne, Plaintiff holds a "state-created liberty interest in demonstrating his innocence with newly discovered evidence." *McKithen*, 626 F.3d at 152. That interest is a product of N.Y. CPL §§ 440.10.1(g) and (g-1), which permit a prisoner to bring a petition challenging his conviction on the basis of newly available evidence, including "[f]orensic DNA testing." Therefore, the Court must determine whether New York's procedures for vindicating that liberty interest are adequate.

In *McKithen*, the Second Circuit, relying on *Osborne*, held that they are. Under New York law, where the petitioner has been convicted at trial, a court must "grant [an] application for forensic DNA testing of . . . evidence upon its determination that if a DNA test had been conducted on such evidence, and if the results had been admitted in the trial resulting in the judgment, there exists a reasonable probability that the verdict would have been more favorable

to the [petitioner]." N.Y. CPL § 440.30.1-a(a)(1). The *McKithen* court concluded that these procedures were less restrictive than the ones upheld in *Osborne*, so it followed *a fortiori* that they too were adequate. Whereas Alaska requires a prisoner to show "clearly and convincingly" or "conclusively" that DNA testing would establish his innocence, New York's "reasonable probability" standard is more petitioner-friendly. *McKithen*, 626 F.3d at 153–54. Nor was there any other basis, in the Second Circuit's view, on which New York's procedures "sink to [the] level of fundamental inadequacy" required by *Osborne*. *Id.* at 153; *see also, e.g., Wesley v. Alexander*, No. 10 Civ. 245 (JG), 2010 WL 2710609, at *7 (E.D.N.Y. July 7, 2010); *Figueroa v. Morgenthau*, No. 09 Civ. 4188 (DLC), 2009 WL 3852467, at *2–3 (S.D.N.Y. Nov. 18, 2009). In short, *McKithen* establishes that New York's procedures do not violate Plaintiff's federal rights. As a result, he has no claim under § 1983.

Notably, the Court has analyzed Plaintiff's claim as a facial challenge to the adequacy of New York's post-conviction procedures. It is possible, of course, that Plaintiff's real complaint is not with those procedures but instead with how they were applied to him. *See* Am. Compl. ¶ 9 (attacking "state court's denying DNA testing"). But to the extent that Plaintiff's claims challenge the New York court's decision itself, the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.[4] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). That doctrine requires abstention when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen*, 626 F.3d at

---

[4] Defendant does not argue this point in his brief, but a Court has an "independent obligation" to inquire into subject matter jurisdiction. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125 (2d Cir. 2011).

154; *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). As the Second Circuit and other courts have held, an as-applied challenge to a denial of post-conviction DNA testing "meets each of *Rooker-Feldman*'s four elements." *McKithen*, 626 F.3d at 154–55; *accord Cooper v. Ramos*, 704 F.3d 772, 777–81 (9th Cir. 2012); *Alvarez v. Att'y Gen. of Fla.*, 679 F.3d 1257, 1262–64 (11th Cir. 2012); *Wagner v. Dist. Att'y of Allegheny Cnty., Pa.*, No. 11-762, 2012 WL 2090093, at *5 (W.D. Pa. May 21, 2012) (collecting cases); *cf. Skinner*, 131 S. Ct. at 1298 ("a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action"). Therefore, in this Court, Plaintiff may challenge only New York's procedures, not the state court decisions applying those procedures to him.

## IV. CONCLUSION

Because *Osborne* and *McKithen* conclusively establish that Plaintiff's claim fails on the merits, the Court need not address Defendant's argument that this action is barred by the statute of limitations. For the reasons stated above, Defendant's motion is granted, and Plaintiff's claim is DISMISSED. The Clerk of Court is requested to terminate this case.

SO ORDERED.

Dated: February 26, 2014
New York, New York

_____
ALISON J. NATHAN
United States District Judge